UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE R. ZAFT,                              Case No. 12-13415

          Plaintiff,                          Paul D. Borman
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

          Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 23)

I.     PROCEDURAL HISTORY

    A.     Proceedings in this Court

On August 2, 2012, plaintiff Stephanie R. Zaft filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Paul D. Borman referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability and disability insurance benefits.  (Dkt. 3).  This matter is before the

Court on cross-motions for summary judgment.  (Dkt. 17, 23).

    B.     Administrative Proceedings

Plaintiff filed an application for a period of disability and disability

insurance benefits on June 9, 2009, alleging that she became disabled beginning

1

January 1, 1992.  (Dkt. 11-5, Pg ID 142-43).[1]  Plaintiff subsequently amended her alleged onset date to January 20, 1992.  (Dkt. 11-5, Pg ID 156-57).  Plaintiff's claim was initially disapproved by the Commissioner on September 3, 2009.  (Dkt. 11-3, Pg ID 93).  Plaintiff requested a hearing and on September 13, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Michael F. Wilenkin, who considered the case de novo.  (Dkt. 11-2, Pg ID 67-91).  In a decision dated October 28, 2010, the ALJ found that plaintiff was not disabled and that she could perform other work that exists in significant numbers in the national economy.  (Dkt. 11-2, Pg ID 47-56).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 6, 2012, denied plaintiff's request for review.  (Dkt. 11-2, Pg ID 42-44); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

---

[1]  Plaintiff also filed a Title XVI application for supplemental security income on June 9, 2009, again alleging disability beginning January 1, 2009.  (Dkt. 11-5, Pg ID 146-48).  That claim was denied on June 16, 2009 because plaintiff had resources in excess of $2000.00.  (Dkt. 11-4, Pg ID 95-99).  Plaintiff has not appealed that decision.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1957 and was 35 years of age on the alleged amended disability onset date.  (Dkt. 11-2, Pg ID 55).  Plaintiff's past relevant work included work as a cashier/store laborer.  (*Id.*).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged amended onset date of January 20, 1992 through the date last insured of December 31, 1992. (Dkt. 11-2, Pg ID 52).  At step two, the ALJ found that plaintiff's radiculitis in the left cervical region and of the left L5 nerve root with tenderness of the left cervical paraspinal musculature, the upper trapezius and the left lower lumbosacral paraspinal musculature were "severe" within the meaning of the second sequential step.  (*Id.*).  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or equal the severity of one of the listings in the regulations.  (*Id.*).  The ALJ concluded that, through the date last insured, plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  (Dkt. 11-2, Pg ID 53-54).  At step four, the ALJ found that plaintiff could not perform her past relevant work as a cashier/store laborer, which she performed at the light exertional level.  (Dkt. 11-2, Pg ID 55).  At step five, the ALJ, relying on the Medical-Vocational Rules 201.27-

3

201.29, denied plaintiff benefits because she was not disabled at any time prior to her date last insured.  (Dkt. 11-2, Pg ID 55-56).

### B.    Plaintiff's Claim of Error

Plaintiff argues that the ALJ's decision in this matter is not supported by substantial evidence.  According to plaintiff, the ALJ failed to evaluate the opinions of her treating physician, Dr. Gary Chodoroff, in the manner required by the treating physician rule.  Specifically, plaintiff contends the ALJ failed to discuss the length, nature, or extent of Dr. Chodoroff's treating relationship with plaintiff, the frequency of examination, or Dr. Chodoroff's area of specialization. In addition, the ALJ failed to state how much weight, if any, he gave Dr. Chodoroff's opinions, and failed to provide specific reasons for assigning less than controlling weight to those opinions.  Plaintiff argues that the ALJ's failure to do so was not a harmless *de minimus* procedural violation because it denied plaintiff the ability to understand the reasoning that underlies the ALJ's decision, and precluded meaningful review of the ALJ's application of the treating physician rule.  *See* 20 C.F.R. § 404.1527(c)(2); Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Plaintiff avers that the United States Court of Appeals for the Sixth Circuit repeatedly has held that an ALJ's failure to specify reasons for discounting a

4

treating source's opinions, or failure to explain how those reasons affect the weight given those opinions, "denotes a lack of substantial evidence," regardless of whether the ALJ's conclusions otherwise might be justified on the record.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009); *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011).

According to plaintiff, the record in this matter includes a medical source statement from Dr. Gary Chodoroff (Tr. 536-39), a specialist in physical medicine and rehabilitation who examined and treated plaintiff at least twenty times between May 1988 and June 1993.  (Tr. 415-26, 429-46).  In the medical source statement, Dr. Chodoroff opined that plaintiff could stand or walk less than two hours out of an eight hour workday, only could sit about two hours out of an eight hour workday, and would require four to five unscheduled breaks of more than ten minutes during an eight hour workday to deal with pain, paresthesias or numbness. (Tr. 537).  Plaintiff contends that the ALJ's conclusion that plaintiff retained the residual functional capacity to perform the full range of sedentary work clearly is inconsistent with these opinions.

Plaintiff further argues that the ALJ failed to analyze Dr. Chodoroff's opinions in the manner required by the treating physician rule.  According to plaintiff, the decision does not state whether Dr. Chodoroff was a treating source or

5

explicitly address whether Dr. Chodoroff's opinions are entitled to controlling weight. Nowhere does the ALJ discuss the length of time that Dr. Chodoroff treated plaintiff, the frequency of examination, or the nature and extent of the treatment he provided. Nowhere does the ALJ mention Dr. Chodoroff's area of specialization or discuss its relevance to his opinions. And nowhere does the ALJ state how much weight, if any, he gave Dr. Chodoroff's opinions, or provide reasons for that weight. According to plaintiff, the ALJ's statement that Dr. Chodoroff's opinions are assigned "reduced weight" (Tr. 13) says no more than that the ALJ does not believe Dr. Chodoroff's opinions are entitled to *controlling* weight. And the ALJ's bald assertion that "[t]he longitudinal record of medical evidence and the record as a whole simply do not support a conclusion of a disability" is not sufficiently specific to permit this Court to determine what weight the ALJ gave Dr. Chodoroff's opinions and the reasons for that weight.

Plaintiff contends that where an ALJ fails to give good reasons for according less than controlling weight to the opinions of a treating physician, the matter should be remanded unless the error is a harmless *de minimus* procedural violation. *See Wilson*, 378 F.3d at 547. Such harmless error may include where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of … the procedural safeguard of reasons." *Id.* However, plaintiff argues, the ALJ's failure to follow

6

Social Security Administration's procedural rules does not qualify as harmless error where the courts cannot engage in "meaningful review" of the ALJ's decision. *Id.* at 544. Plaintiff asserts that the ALJ's failure to follow the treating physician rule in this case was not a harmless *de minimus* procedural violation because Dr. Chodoroff's opinions addressed medical problems within his field of expertise, based on frequent examination of plaintiff over more than five years, and it would be absurd to suggest that Dr. Chodoroff's opinions were so patently deficient that the ALJ could not possibly credit them. Likewise, plaintiff continued, it cannot be said that the ALJ's decision otherwise has met the goal of the procedural safeguard of reasons. The ALJ adopted Dr. Chodoroff's diagnosis (Tr. 11 & Tr. 421), but rejected without explanation Dr. Chodoroff's opinions regarding plaintiff's residual functional capacity. Plaintiff argues that by doing so, the ALJ made it impossible for plaintiff to understand the reasoning underlying the ALJ's decision, and impossible for this Court to conduct a meaningful review of the ALJ's application of the treating physician rule. Therefore, plaintiff urges the Court to grant plaintiff's motion for summary judgment and remand this matter for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

### C.     Commissioner's Motion for Summary Judgment

The Commissioner argues that plaintiff's sole argument on appeal that the ALJ failed to evaluate Dr. Gary Chodoroff's opinion according to the treating physician rule lacks merit.  The Commissioner states that plaintiff's treating physician, Dr. Chodoroff, examined plaintiff on five separate occasions from her alleged onset date of January 20, 1992, though the date she was last insured for disability benefits of December 31, 1992, and then examined plaintiff one time on September 3, 2010, before completing a medical source statement for plaintiff's attorney on September 7, 2010.  (Tr. 417-21, 534-39).  In that medical source statement, Dr. Chodoroff opined that plaintiff could rarely lift and carry ten pounds, could stand and walk less than two hours out of an eight-hour workday, could sit for two hours out of an eight-hour workday, could never climb, could rarely twist, stoop, bend, crouch, squat and climb stairs, and would require four-to-five unscheduled breaks of more than ten minutes during an eight-hour workday. (Tr. 536-39).

The Commissioner concedes that the ALJ could have elaborated more in his decision, but argues that the ALJ did articulate a good reason for rejecting the opinion of Dr. Chodoroff in accordance with *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004) and the regulations.  (Tr. 13).  The Commissioner contends that the ALJ appropriately reasoned that the longitudinal

record of medical evidence and the record as a whole simply did not support a

conclusion of disability that began any time between plaintiff's alleged onset date

of January 20, 1992, and the date she was last insured for disability benefits on

December 31, 1992. (Tr. 13). *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the

more consistent an opinion is with the record as a whole, the more weight we will

give that opinion."). The Commissioner asserts that earlier in his decision, just

preceding this paragraph, the ALJ discussed the medical evidence, including Dr.

Chodoroff's treatment notes. (Tr. 12). The ALJ noted that plaintiff reported, on

January 15, 1992, that she developed pain in the left side of her neck, down her left

arm and the left side of her back after snow and other material entered her vehicle,

with her window open about one inch, from a snowplow truck in the next lane.

(Tr. 12, 421). On examination on January 20, 1992, the amended alleged onset

date, plaintiff experienced exquisite tenderness of the left cervical paraspinal

musculature, and the upper trapezius and the left lower lumbosacral paraspinal

musculature. (Tr. 12, 421). Motor muscle strength was full at 5/5 with normal

muscle tone and no fasciculations. (Tr. 12, 421). Reflexes were 1+ throughout

with down-going toes and a negative Hoffmann's sign. (Tr. 12, 421). Sensation

was diminished over the left L-5 dermatome and no other sensory deficits were

present. (Tr. 12, 421). Lumbar flexion was limited to 80 out of 90 degrees with a

complaint of left leg pain and plaintiff's gait was normal. (Tr. 12, 421). The

diagnosis was a radiculitis in the left cervical region and of the left L-5 nerve root. (Tr. 12, 421).

Although after the date plaintiff was last insured for disability benefits, the Commissioner notes that the ALJ also discussed Dr. Chodoroff's records dated June 17, 1993. (Tr. 12). Dr. Chodoroff noted plaintiff was doing worse and, up until this point, he had believed that plaintiff had a quite good prognosis, although he was uncertain on that date. (Tr. 12, 415). Plaintiff reported worsening pain that traveled from the back down the left leg, and on examination, the lower extremities had persistent and symmetric deep tendon reflexes. (Tr. 12, 415). Right straight leg raising at 80 degrees produced sharp left buttock pain while left straight leg raising at 45 degrees produced increasing ankle dorsiflexion. (Tr. 12, 415). There was no longer diffuse lumbosacral and gluteal paraspinal tenderness, but focal left sciatic notch tenderness remained present. (Tr. 12, 415). Forward lumbar flexion produced pain down the left leg while extension caused pain in the central and left lower back. (Tr. 12, 415). Plaintiff continued with physical therapy modalities, including exercises and the use of a health club membership. (Tr. 12, 415).

The Commissioner recognized that the ALJ did not discuss all the factors as stated in the regulations in discounting Dr. Chodoroff's opinion (Tr. 10), but argued that even if the regulations and *Wilson* are read as requiring an ALJ to specifically discuss every factor in the regulations, the court in *Wilson* recognized

that a violation of the regulation could be considered harmless error "if a treating source's opinion is so patently deficit that the Commissioner could not possibly credit it" or "where the Commissioner has met the goal of § 1527(d)(2)--the provision of the procedural safeguard of reasons--even though []he has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. The Commissioner argues that should the Court find that the ALJ erred by not complying with the regulations, such error would be harmless. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (the Sixth Circuit has refused to remand a case where an ALJ's mistake or omission amounts to nothing more than harmless error). The Commissioner contends that Dr. Chodoroff gave his opinion on September 7, 2010, after he examined plaintiff on September 3, 2010. (Tr. 535-39). Dr. Chodoroff specifically stated that he had not seen plaintiff since 1992 and he no longer had her medical records. (Tr. 534). Dr. Chodoroff reviewed some records plaintiff provided and then examined her prior to completing his medical source statement. (Tr. 534). The Commissioner contends that Dr. Chodoroff did not state that his opinion was for the period prior to December 31, 1992 (Tr. 536-39), which is extremely important in this case since plaintiff must show that she is disabled prior to the date she was last insured for disability benefits on December 31, 1992. (Tr. 114, 150). The Commissioner avers that a showing that an impairment became disabling after the date plaintiff

11

was last insured for disability benefits, such as on September 7, 2010, is insufficient to establish eligibility for disability insurance benefits. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). While recognizing that Dr. Chodoroff's September examination and 2010 medical source statement may document a worsening in plaintiff's condition, the Commissioner asserts that this evidence would not be relevant to the period under adjudication. According to the Commissioner, the Sixth Circuit has explained that "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003) (citations omitted). Moreover, the Commissioner argues that Dr. Chodoroff's opinion was not entitled to any deference or controlling weight. Dr. Chodoroff's medical source opinion limited plaintiff to working less than a full eight-hour day (Tr. 536-39), and the Commissioner contends that this opinion amounted to nothing more than a disability opinion for which the ALJ is not required to give special deference or controlling weight. *See* 20 C.F.R. § 404.1527(e)(2); *see Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (stating that "no special significance will be given to opinions of disability, even if they come from a treating physician") (internal quotations omitted). Therefore, based on the above, the Commissioner argues that the ALJ properly discounted Dr. Chodoroff's opinion.

The Commissioner, however, submits that if this court finds that the ALJ erred by not complying with the regulations in considering Dr. Chodoroff's opinion, the such error would be harmless. The Commissioner, and not the court, is charged with the duty to weigh the evidence, resolve material conflicts in the testimony, and determine the case accordingly. Thus, even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, the ALJ's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 263 (6th Cir. 1988). The Commissioner contends that in this case, the record as a whole supports the ALJ's conclusions that plaintiff was not disabled prior to her date last insured of December 31, 1992. Thus, the Court should grant the Commissioner's motion for summary judgment.

### D.   Plaintiff's Reply Brief

Plaintiff argues that the Commissioner concedes that Dr. Chodoroff was plaintiff's treating physician. Dr. Chodoroff–a specialist in physical and rehabilitative medicine–examined and treated plaintiff at least nineteen times during the four and one-half years immediately preceding December 31, 1992, plaintiff's date last insured for disability benefits, and during the six months immediately following that date. Plaintiff further argues that the Commissioner also concedes, as it must, that the ALJ failed to follow the treating physician rule in

explaining his reasons for rejecting Dr. Chodoroff's medical opinions.  According to plaintiff, the regulations require ALJs to consider and address a wide variety of factors before rejecting the medical opinions of treating physicians, including *inter alia* the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, and the treating physician's area of specialization, *see* 20 C.F.R. § 404.1527(c), and the ALJ failed to discuss any of these factors in his decision.  Plaintiff contends that the ALJ's failure to do so was no mere technical defect.

Plaintiff further argues that the ALJ's failure to follow the treating physician rule should not be excused.  And, the Commissioner's argument that Dr. Chodoroff's opinions "limiting Plaintiff to working less than a full eight-hour day … amount[] to nothing more than a disability opinion for which the ALJ is not required to give special deference or controlling weight" grossly mischaracterizes Dr. Chodoroff's opinions.  Dr. Chodoroff expressed no opinion regarding plaintiff's ability to work a full eight-hour day or about the ultimate issue of disability.  (Tr. 536-39).  Instead, Dr. Chodoroff opined *inter alia* that plaintiff only would be able to sit about two hours in an eight-hour workday, would be able to stand or walk less than two hours out of an eight-hour workday, would require four to five unscheduled breaks per workday, and would miss more than four days of work per month due to her impairments and treatment.  (*Id.*).  Plaintiff contends

14

that Dr. Chodoroff's opinions certainly are inconsistent with the ALJ's finding that plaintiff has the residual functional capacity to perform the full range of sedentary work. *See* SSR 96-9p (sedentary work typically requires the ability to sit six hours out of an eight-hour workday). Plaintiff argues that Dr. Chodoroff's opinions do not address his ability to work a full eight-hour day or the ultimate issue of disability. *Id.* (a finding that an individual has the ability to do less than the full range of sedentary work does not necessarily equate with a decision of "disabled").

Plaintiff further argues that the fact that Dr. Chodoroff expressed his opinions many years after the treatment relationship ended, without access to the underlying treatment records, is just a factor that an ALJ may consider in applying the treating physician rule and it is by no means outcome determinative, given the long duration of the treatment relationship between Dr. Chodoroff and plaintiff, and the high frequency of examination during that period. And, as for the Commissioner's argument that Dr. Chodoroff failed to state whether his opinions related to the period before plaintiff's date last insured, plaintiff contends that the Commissioner simply has misstated the facts because Dr. Chodoroff explicitly stated that his opinions regarding plaintiff's symptoms and limitations applied beginning in 1987. (Tr. 539).

As to the Commissioner's contention that the ALJ's failure to follow the

15

treating physician rule should be excused because the ALJ's statement of reasons for rejecting Dr. Chodoroff's opinions was sufficiently specific to satisfy the procedural requirement of reason-giving that underlies the treating physician rule, plaintiff relies on the arguments in her opening brief.  Plaintiff does note, however, that the Commissioner's brief suffers from the same defect as the ALJ's decision because the Commissioner's brief, like the ALJ's decision, paraphrases technical passages from Dr. Chodoroff's treatment records, but fails to *explain* in any meaningful way how Dr. Chodoroff's opinions are inconsistent with these passages, inconsistent with the longitudinal record of medical evidence, or inconsistent with the record as a whole.  In the absence of such an explanation, meaningful substantial evidence review is impossible.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

16

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

17

observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

18

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

20

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    The ALJ failed to comply with the treating source rule

The undersigned agrees with plaintiff that the ALJ failed to give sufficiently good reasons for not giving controlling weight to the opinions of Dr. Chodoroff, plaintiff's treating physician during the relevant time period. As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id.* at 406 (citing § 404.1527(d)(2)). Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight

22

attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies.  Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."

The ALJ discussed Dr. Chodoroff's treatment notes of plaintiff on January 20, 1992 and July 15, 1993.  (Dkt. 11-2, Pg ID 53).  The ALJ also briefly discussed the results of an examination and laboratory test in December 1991 with Dr. Scott Lewis, as well as plaintiff's testimony regarding her symptoms and daily activities. (Dkt. 11-2, Pg ID 53-54).  Dr. Chodoroff examined plaintiff on September 3, 2010, and completed a medical source statement on September 7, 2010.  (Tr. 534-39). The ALJ does not discuss this examination or the contents of the medical source statement.  Rather, the ALJ simply states:

> The undersigned must assign reduced weight to the opinion statement of Gary Chodoroff, M.D. in exhibit 20F.  The longitudinal record of medical evidence and the record as a whole simply do not support a conclusion of a disability that began anytime between the alleged onset date of January 20, 1992 and the date last insured of December 31, 1992.

(*Id.*).  This perfunctory analysis wholly fails to satisfy the ALJ's obligation to give good reasons for not giving controlling weight to the opinion of plaintiff's treating physician.  As the Sixth Circuit stated:

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his

23

> physician has deemed him disabled and therefore might
> be especially bewildered when told by an administrative
> bureaucracy that [] he is not.

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).

Moreover, if the ALJ determined that plaintiff's treating physician's
opinions should not be given controlling weight despite the medical evidence in
support, "the ALJ must still determine how much weight is appropriate by
considering a number of factors, including the length of the treatment relationship,
supportability of the opinion, consistency of the opinion with the record as a
whole, and any specialization of the treating physician."   *Blakley v. Comm'r of Soc.
Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).   This was not done either.   And, even if the
opinions were not entitled to controlling weight, they were entitled to deference. 20
C.F.R. § 404.1527(d)(2)(I).   As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion is
> not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Chodoroff's opinions should not be
given controlling weight or even deference, as required by the regulations. 20

24

C.F.R. § 404.1527(d)(2).  The ALJ's perfunctory statement that "[t]he longitudinal record of medical evidence and the record as a whole simply do not support a conclusion of disability" fails to comply with the requirements set forth in the case law and regulations.  Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citation omitted).

### 2.    The ALJ's failure to comply with the treating source rule was not harmless

The Commissioner argues that, even though the ALJ did not adequately address Dr. Chodoroff's opinion, such error should be found harmless.  A violation of the good reasons rule may be "harmless error" if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547)).  "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability'

25

of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 Fed. Appx. at 551 (citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006)).

The undersigned does not believe that any error in complying with the regulations governing treating physician opinions is harmless. First, it cannot be said that Dr. Chodoroff's opinions are so patently deficient that the Commissioner could not possibly credit them, because the ALJ found Dr. Chodoroff's opinion sufficient as to plaintiff's diagnosis. (Dkt. 11-2, Pg ID 52-53); *Cole*, 661 F.3d at 940 (harmless error rule did not apply because the ALJ relied on the treating physician's diagnosis); *Clement v. Comm'r of Soc. Sec.*, 2012 WL 313750, at *3 (E.D. Mich. Feb. 1, 2012) (same). Further, the undersigned does not believe, contrary to the Commissioner's argument, that merely because Dr. Chodoroff's opinion is "retrospective," it is deficient and not entitled to the same deference. This is not a case where a treating physician who did not treat the claimant during the time period in question is offering such a retrospective opinion. *See e.g.*, *Wladysiak v. Comm'r of Soc.* Sec., 2013 WL 2480665, at *11 (E.D. Mich. June 10, 2013) (citing *Lancaster v. Astrue*, 2009 WL 1851407, at *11 (M.D. Tenn. 2009) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the

26

eligible period."); *Clendening v. Astrue*, 2011 WL 1130448, *5 (N.D. Ohio 2011)
(retrospective opinions not entitled to deference where treating physician had no
first-hand knowledge of the claimant's condition prior to the last date insured.),
*aff'd*, 482 Fed. Appx. 93 (6th Cir. 2012)).  Rather, Dr. Chodoroff was plaintiff's
treating physician before and during the relevant time period, and thus has first-
hand knowledge of plaintiff's condition prior to her date last insured, and rendered
his opinion only after examining plaintiff and reviewing medical records from the
relevant time period.  Further, he stated that the earliest date of the symptoms and
limitations is 1987, and thus his opinion covers the relevant time period.  (Tr. 536-
39).  And the Commissioner's argument that Dr. Chodoroff's opinion is not
entitled to deference because it amounts to nothing more than a disability opinion
for which the ALJ is not required to give specific deference or controlling weight
also lacks merit.  The undersigned recognizes that the determination of disability is
ultimately the prerogative of the Commissioner, not the treating physician.  *See* 20
C.F.R. § 404.1527(e)(2); *Bass*, 499 F.3d at 511 ("no special deference will be
given opinions of disability, even if they come from a treating physician").
However, as plaintiff correctly points out, Dr. Chodoroff did not express an
opinion on plaintiff's ability to work a full eight-hour day or about the ultimate
issue of disability.  (Tr. 536-39).

The ALJ's failure to adequate address Dr. Chodoroff's opinion similarly

27

does not meet the second or third prongs of the harmless error exception. The ALJ did not adopt Dr. Chodoroff's RFC assessment or make findings consistent with it. Nor can the undersigned say that the goal of § 1527(d)(2) was met, because the ALJ's decision leaves this Court without a clear understanding of why the ALJ credited Dr. Chodoroff's opinion as to diagnosis but discredited it as to work limitation. Although the ALJ may decide that this opinion should not be given controlling weight, he failed to conduct the proper analysis. Thus, the undersigned concludes that a remand is necessary so the ALJ may re-evaluate the treating physician's opinions and supporting treatment evidence so that the parties will be able to understand the Commissioner's rationale and the procedure through which the decision was reached. *See Wilson*, 378 F.3d at 46 ("To hold otherwise . . . would afford the Commissioner the ability [to] violate the regulation[s] with impunity and render the protections promised therein illusory.").

### 3.   Lack of other medical opinion regarding plaintiff's functional limitations

A related problem in this case is the lack of any other medical opinion regarding plaintiff's functional limitations. The ALJ states that he assigned "reduced weight" to Dr. Chodoroff's opinion, but did not appear to adopt any of the doctor's functional limitations. Dr. Mitchell Klausner, M.D., completed a Physical Medical Source Statement on July 27, 2010, opining that plaintiff has multiple medical, physical and emotional disorders that severely limit her ability to

28

work, but also stated that he first saw plaintiff on June 23, 2008, and that the

earliest date the opinion applies is that date.  (Tr. 518-21).  The ALJ did not

address this opinion in his decision.  There is no consulting physician opinion in

the record and the Psychiatric Review Technique form and the Physical Residual

Functional Capacity Assessment form are essentially blank (other than for

"Consultant's Notes") and unsigned.  (Tr. 376-97).  No other treating physician or

any other consulting or examining physician offered any other opinions regarding

plaintiff's functional limitations.[2]  Thus, we are left with the circumstance of the

---

[2] The undersigned also notes that another flaw in the ALJ's analysis is the improper consideration of the opinion of a non-physician single decision-maker on the equivalency issue at step three of the sequential analysis.  (Dkt. 11-3, Pg ID 93).  In this case, the single-decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2), which provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The Programs Operations Manual System ("POMS"), however, requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM *because SDM-completed forms are not opinion evidence at the appeal levels*."  POMS DI § 24510.05 (emphasis added).  Rather, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b).

In this case, there is no Disability Determination and Transmittal form or PRFC assessment form signed by a medical advisor as to plaintiff's physical impairments in this record, and thus no medical expert's opinion on the issue of equivalency.  (Dkt. 11-3, Pg ID 93; Dkt 11-7, Pg ID 390-97).  The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton v. Astrue*, 2012 WL 1852084, at *13 (D.N.H. May 11, 2012) (collecting cases); *see also Byberg v. Comm'r of Soc. Sec.*, 2013 WL 1278500, at *2 (E.D. Mich. Mar. 27, 2013) ("Defendant's attempt to expand the purposes of the SDM model beyond the initial determination of disability and into the proceedings before the ALJ is misplaced."); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (remanding because a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL

ALJ interpreting raw medical data without the benefit of an expert medical opinion.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues

---

766180, at *8-9 (E.D. Mich. Feb. 4, 2013) (remanding because no expert opinion on equivalence in the record), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."). While the undersigned is not necessarily convinced that plaintiff can show that her physical impairments satisfy the equivalency requirements, the undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p. For this additional reason, the undersigned recommends that, on remand, the ALJ should obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner."  20 C.F.R. § 404.1527(d).  Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ

31

impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Although ultimately a finding of no disability at either step four or five of the sequential evaluation may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination.  The only functional limitations in the record are those found in Dr. Chodoroff's records, which the ALJ discredits, finding them inconsistent with the medical evidence. There is no RFC determination by a consulting physician.  Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings.  Under these circumstances, and given that the matter will be remanded for violation of the treating source rule, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** to the Commissioner under

sentence four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 19, 2013                          s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 19, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: David R. Moss, Andrew J. Lievense, AUSA, Deanna Sokolski and Jason Scoggins and the Commissioner of Social Security.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7887
                                               tammy_hallwood@mied.uscourts.gov